**FILED**

Feb 10 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/DDE          DEPUTY

ORDERED UNSEALED on 02/12/2026   s/ scotttwee(

SEALED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

August 2024 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>POLY ANTUNEZ (1),<br> aka "Poly,"<br> aka "Poly Apolinar,"<br> aka "Apolinar Antunez,"<br>ANTONIO QUINONES (2),<br> aka "Tony,"<br> aka "T,"<br>JOVANNY ENRIQUEZ (3),<br> aka "Gio,"<br> aka "Maniac,"<br> aka "@parkside.finest,"<br> aka "@parkside.general,'<br><br>    Defendants. | Case No. ___'26 CR0402  TWR___<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Secs. 1959(a)(5)–<br>Conspiracy to Commit Murder in Aid<br>of Racketeering; Title 18, U.S.C.,<br>Secs. 1959(a)(5) and 2 – Attempted<br>Murder in Aid of Racketeering;<br>Title 18, U.S.C., Secs. 1959(a)(3)<br>and 2 – Assault with a Dangerous<br>Weapon in Aid of Racketeering;<br>Title 18, U.S.C.,<br>Sec. 1958(a) – Conspiracy to Commit<br>Murder for Hire and Use of<br>Interstate Facilities in Commission<br>of Murder for Hire; Title 18,<br>U.S.C., Secs. 924(d) and<br>981(a)(1)(C), and Title 28, U.S.C.,<br>Sec. 2461(c) – Criminal Forfeiture |

The grand jury charges:

At all times relevant to this Indictment:

## INTRODUCTION

1. Defendants POLY ANTUNEZ, aka "Poly," aka "Poly Apolinar,"
aka "Apolinar Antunez," ANTONIO QUINONES, aka "Tony," aka "T," and

AEG:JCM:PSH:nlv:San Diego:2/10/26

JOVANNY ENRIQUEZ, aka "Gio," aka "Maniac," aka "@parkside.finest," aka "@parkside.general," and others known and unknown to the grand jury were members and associates of an organization engaged in, among others things, murder, attempted murder, assault with a deadly weapon, conspiracy to traffic in narcotics, narcotics trafficking, robbery, extortion, and witness intimidation. This organization, known as the "Sinaloa Cartel," which includes Sinaloa Cartel and "Mexican Mafia" members, operated in the Central and Southern Districts of California, the Republic of Mexico, and elsewhere. The Sinaloa Cartel, which includes its leadership, membership, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Sections 1959(b)(2) and 1961(4), that is a group of individuals associated in fact (hereinafter the "Enterprise"). The Enterprise engaged in, and its activities affected, interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

2.    The Enterprise, through its leaders, members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(a)(1) and 1961(1), that is, multiple acts involving murder in violation of California Penal Code §§ 182, 187, 189, 21a, 31, and 664; multiple acts involving kidnapping in violation of California Penal Code §§ 207, 182, 21a, 31, and 664; multiple acts involving extortion in violation of California Penal Code §§ 518, 519, 182, 21a, 31, and 664; and multiple offenses involving drug trafficking in violation of 21 U.S.C. §§ 841, 843, 846, 952, 959, 960, and 963.

## BACKGROUND OF THE SINALOA CARTEL

3.   The Sinaloa Cartel is based in Culiacan, Sinaloa, Mexico, but operates in Baja California, the Southern District of California, and elsewhere in Mexico and the United States.

4.   The primary purpose of the Sinaloa Cartel is to smuggle large quantities of cocaine methamphetamine, and fentanyl, as well as other federally controlled substances, into the United States and to distribute them to various destination cities in the United States. The Cartel's success is achieved by securing, maintaining and regulating transportation routes for drugs and drug proceeds between Mexico and the United States, including through the critical transportation from Mexico into the United States through Tijuana, Mexico. To secure and maintain these lucrative corridors, members and associates of the Sinaloa Cartel commit acts of violence.

5.   The Sinaloa Cartel is comprised of members of Drug Trafficking Organizations previously run by Joaquin "Chapo" Guzman Loera and Ismael "Mayo" Zambada Garcia, and later managed by their successors since being taken into custody in the United States. Regional lieutenants and their cell members oversee drug smuggling and money laundering activities and employ and direct groups to engage in violent activities in furtherance of the objectives of the Enterprise. The enforcement operations for the Sinaloa Cartel generally are carried out by teams of assassins, known in Spanish as sicarios. Their enforcement activities include gathering information or intelligence about competing drug organizations, including Cartel Arellano Felix; enforcing discipline among the members of or persons working on behalf of the Sinaloa Cartel, such as those who could or would not account for lost loads of controlled

3

substances or other acts of perceived disloyalty; and committing acts of violence against competitors and errant cartel members through such means as kidnapping, torture, and murder of the responsible person or his or her family members. Often, the murders involve extreme violence and a public display of the victim.

6. The proceeds generated by trafficking in controlled substances are returned to the Sinaloa Cartel through various methods of money laundering. That money is then used by leadership in the Sinaloa Cartel to pay its members and associates; to reinvest in the acquisition, production, and trafficking of drugs; to invest in the Enterprise by purchasing assets and properties related to the daily function of the Sinaloa Cartel, to include firearms, ammunition, bullet-proof vests, radios, telephones, uniforms, and vehicles. The Sinaloa Cartel generates proceeds from trafficking in controlled substances in a variety of ways, including by joining with other criminal organizations such as the Mexican Mafia to become their supplier of controlled substances.

### BACKGROUND OF THE MEXICAN MAFIA

7. The Mexican Mafia, also known as "La Eme," is a prison gang that was organized within the California State Prison system to control and direct the activities of Southern California street gangs. "Made" members of the Mexican Mafia have assumed authority for different regions in Southern California. Typically, a "made" member is an inmate within the California State Prison system and exercises his control and direction over the region from within the state prison facility where he is housed. Some members are also out of custody and, therefore, able to exercise authority directly from within neighborhoods and communities in Southern California and elsewhere.

4

8.    The Mexican Mafia generates revenue from and exerts control over illegal activities of sureños gangs within Southern California and elsewhere, who pay taxes to and are subordinate associates of the Mexican Mafia. The Mexican Mafia leaders issue directions and orders, including orders to kill rival gang members, members of law enforcement, and members of the public, which are referred to as "green lights." Those orders are to be executed by sureños gang members and are understood by sureños gang members as carrying the opportunity to elevate their status within the organization or potentially to become a "made" member, referred to as a "brother" (or, in Spanish, "carnal"), of the organization.

9.    The Mexican Mafia establishes rules to govern acts of violence committed by local street gang members, including Wilmas gang members. The Mexican Mafia, thus, requires members to adhere to protocols for the conduct of violent attacks, narcotics trafficking, and murders, including the issuance of "green light" authorizations for murder. Failure to adhere to Mexican Mafia rules may lead to the issuance of a "green light," directing an attack on the offending member, or the requirement that money be paid to the organization. "Green lights" are also frequently issued in retaliation for a perceived disrespect to a Mexican Mafia leader, to punish the unauthorized collection of "tax" payments in a neighborhood controlled by the gang, or to sanction individuals who traffic in narcotics without the gang's authorization or without paying the required "tax" to the Wilmas and Mexican Mafia, or who delay in paying "taxes." "Green lights" may be executed by Mexican Mafia, sureños gang members, or others seeking to gain favor or status with the Mexican Mafia and gang community.

10.   Mexican Mafia, sureños gang members, and associates regularly exploit prison visits, telephone calls, policies concerning letter-communications with attorneys, and prison monetary accounts in order to generate income from narcotics trafficking and other crimes of the Enterprise, to promote the criminal Enterprise and to direct the operation of Wilmas gang from within the California State Prison system. Mexican Mafia leaders also require regular payments from prisoners incarcerated in the Los Angeles County Jail system.

<u>**PURPOSES OF THE ENTERPRISE**</u>

11.   The purposes of the Sinaloa Cartel include, but are not limited to, the following:

a.   Enriching the members and associates of the Enterprise through, among other things, conspiracy to import and distribute federally controlled substances, money laundering, and conspiracy to commit murder.

b.   Promoting and enhancing the Enterprise and the activities of its members and associates.

c.   Preserving and protecting the power, territory and profits of the Enterprise through the use of intimidation, violence, threats of violence, kidnapping, torture, and murder.

d.   Keeping rival traffickers, potential informants, witnesses against the Enterprise, law enforcement, the media, and the public-at-large in fear of the Enterprise, and in fear of its members and associates through threats of violence and violence.

e.   Preserving the ongoing viability of the Enterprise by kidnapping, torturing and murdering those determined to be enemies of

the Enterprise, disloyal to the Enterprise, or those who lose or steal Enterprise assets.

　　　f.　Forming partnerships with other criminal organizations, such as the Mexican Mafia and all of its subordinate organizations.

　　12.　The means and methods by which the defendants conducted and participated in the conduct of the affairs of the Enterprise included:

　　　a.　Defendants, along with other members and associates of the Enterprise, coordinated with transportation cells to arrange for large quantities of cocaine and methamphetamine to be imported into the United States through various drug trafficking routes including at various points of entry along the United States/Mexico boundary surrounding the Tijuana area, and oversaw the distribution of the methamphetamine and cocaine in California and elsewhere in the United States;

　　　b.　Defendants, along with other members and associates of the Enterprise, jointly arranged for the proceeds of their drug trafficking activities collected in the United States to be smuggled back into Mexico;

　　　c.　Defendants, along with other members and associates of the Enterprise, committed, attempted and threatened to commit acts of violence, including kidnapping, torture, and murder, to protect and expand the Enterprise's criminal operations;

　　　d.　Defendants, along with other members and associates of the Enterprise, organized, used, and threatened to use physical violence against various individuals, including rival cartel members.

//

//

## Count 1

### (Conspiracy to Commit Murder in Aid of Racketeering Activity)

### [18 U.S.C. § 1959(a)(5)]

13.  Paragraphs 1 through 12 are re-alleged and incorporated herein.

14.  Beginning on a date unknown to the grand jury and continuing up to and including March 27, 2024, within the Southern District of California and elsewhere, defendants POLY ANTUNEZ, aka "Poly," aka "Poly Apolinar," aka "Apolinar Antunez," ANTONIO QUINONES, aka "Tony," aka "T," and JOVANNY ENRIQUEZ, aka "Gio," aka "Maniac," aka "@parkside.finest," aka "@parkside.general," and others known and unknown to the grand jury, including Andrew Nunez, aka "Felon," aka "Shooter," and Johncarlo Quintero, aka "Dumper," both charged elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in the Enterprise, which engaged in racketeering activity, did knowingly and intentionally conspire with each other and with others known and unknown to the grand jury to murder Victim 1 on or about March 26 and 27, 2024, in violation of California Penal Code, Sections 187, 189, and 182; all in violation of Title 18, United States Code, Section 1959(a)(5).

## Count 2

### (Attempted Murder in Aid of Racketeering)

### [18 U.S.C. §§ 1959(a)(5) and 2]

15.  Paragraphs 1 through 12 are re-alleged and incorporated herein.

16.  On or about March 26, 2024, within the Southern District of California and elsewhere, defendants POLY ANTUNEZ, aka "Poly," aka "Poly

Apolinar," aka "Apolinar Antunez," ANTONIO QUINONES, aka "Tony," aka "T," and JOVANNY ENRIQUEZ, aka "Gio," aka "Maniac," aka "@parkside.finest," aka "@parkside.general," and others known and unknown to the grand jury, for the purpose of gaining entrance to and maintaining and increasing position in the Enterprise, which engaged in racketeering activity, while aiding and abetting each other, did knowingly, willfully, and intentionally attempt to murder Victim 1, in violation of California Penal Code, Sections 187, 189, 21a, and 664; all in violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

## Count 3

### (Assault with a Dangerous Weapon in Aid of Racketeering)

### [18 U.S.C. §§ 1959(a)(3) and 2]

17. Paragraphs 1 through 12 are re-alleged and incorporated herein.

18. On or about March 26, 2024, within the Southern District of California, defendants POLY ANTUNEZ, aka "Poly," aka "Poly Apolinar," aka "Apolinar Antunez," ANTONIO QUINONES, aka "Tony," aka "T," and JOVANNY ENRIQUEZ, aka "Gio," aka "Maniac," aka "@parkside.finest," aka "@parkside.general," and others known and unknown to the grand jury, for the purpose of gaining entrance to and maintaining and increasing position in the Enterprise, which engaged in racketeering activity, while aiding and abetting each other, did willfully and unlawfully assault Victim 1, with a dangerous weapon, to wit, a firearm, in violation of California Penal Code, Sections 245(a)(2) and 31; in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

//

//

## Count 4

### (Attempted Murder in Aid of Racketeering)

### [18 U.S.C. §§ 1959(a)(5) and 2]

19. Paragraphs 1 through 12 are re-alleged and incorporated herein.

20. On or about March 27, 2024, within the Southern District of California and elsewhere, defendants POLY ANTUNEZ, aka "Poly," aka "Poly Apolinar," aka "Apolinar Antunez," ANTONIO QUINONES, aka "Tony," aka "T," and JOVANNY ENRIQUEZ, aka "Gio," aka "Maniac," aka "@parkside.finest," and others known and unknown to the grand jury, for the purpose of gaining entrance to and maintaining and increasing position in the Enterprise, which engaged in racketeering activity, while aiding and abetting each other, did knowingly, willfully, and intentionally attempt to murder Victim 4, in violation of California Penal Code, Sections 187, 189, 21a, and 664; all in violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

## Count 5

### (Assault with a Dangerous Weapon in Aid of Racketeering)

### [18 U.S.C. §§ 1959(a)(3) and 2]

21. Paragraphs 1 through 12 are re-alleged and incorporated herein.

22. On or about March 27, 2024, within the Southern District of California, defendants POLY ANTUNEZ, aka "Poly," aka "Poly Apolinar," aka "Apolinar Antunez," ANTONIO QUINONES, aka "Tony," aka "T," and JOVANNY ENRIQUEZ, aka "Gio," aka "Maniac," aka "@parkside.finest," aka "@parkside.general," and others known and unknown to the grand jury, for the purpose of gaining entrance to and maintaining and increasing

10

position in the Enterprise, which engaged in racketeering activity, while aiding and abetting each other, did willfully and unlawfully assault Victim 4, with a dangerous weapon, to wit, a firearm, in violation of California Penal Code, Sections 245(a)(2) and 31; all in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

### Count 6

### (Conspiracy to Commit Murder-for-Hire)

### [18 U.S.C. §§ 1958(a)]

23. Beginning on a date unknown to the grand jury and continuing up to and including March 27, 2024, within the Southern District of California and elsewhere, defendants POLY ANTUNEZ, aka "Poly," aka "Poly Apolinar," aka "Apolinar Antunez," ANTONIO QUINONES, aka "Tony," aka "T," and JOVANNY ENRIQUEZ, aka "Gio," aka "Maniac," aka "@parkside.finest," aka "@parkside.general," and others known and unknown, did knowingly and intentionally conspire with each other and others known and unknown to the grand jury, including Andrew Nunez, aka "Felon," aka "Shooter," and Johncarlo Quintero, aka "Dumper," both charged elsewhere, to use and cause another to use facilities of interstate and foreign commerce, including, specifically, cellular telephones, the internet, Facebook, Instagram, and WhatsApp, with the intent to murder Victim 1, in violation of the laws of the State of California and the United States, as consideration for the receipt of, and as consideration for a promise and agreement to pay, things of pecuniary value, to wit, United States currency, and conspired with interdependence to do the same; all of which resulted in personal injury, namely the shooting of Victim 1 in the leg on or about March 26, 2024, and the shooting of Victim 4 in the face, hand, and arm, on or about

March 27, 2024; all in violation of Title 18, United States Code, Section 1958(a).

### Count 7

**(Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire)**

**[18 U.S.C. § 1958(a)]**

24. Beginning on a date unknown to the grand jury and continuing up to and including March 27, 2024, within the Southern District of California and elsewhere, defendants POLY ANTUNEZ, aka "Poly," aka "Poly Apolinar," aka "Apolinar Antunez," ANTONIO QUINONES, aka "Tony," aka "T," and JOVANNY ENRIQUEZ, aka "Gio," aka "Maniac," aka "@parkside.finest," aka "@parkside.general," did knowingly use and cause another to use facilities of interstate and foreign commerce, including, specifically, cellular telephones, the internet, Facebook, Instagram, and WhatsApp, with the intent that the murder of Victim 1 be committed in violation of the laws of the State of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay anything of pecuniary value, to wit, United States currency, and conspired with interdependence to do the same; all of which resulted in personal injury, namely the shooting of Victim 1 in the leg on or about March 26, 2024, and the shooting of Victim 4 in the face, hand, and arm, on or about March 27, 2024; all in violation of Title 18, United States Code, Section 1958(a).

//
//
//
//

## FORFEITURE ALLEGATION

25.    The allegations contained in Counts 6 and 7 are re-alleged and by reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 924(d) and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

26.    Upon conviction of one and more of the offenses alleged in Counts 6 and 7 of this Indictment and pursuant to Title 18, United States Code Sections 924(d) and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), defendants POLY ANTUNEZ, aka "Poly," aka "Poly Apolinar," aka "Apolinar Antunez," ANTONIO QUINONES, aka "Tony," aka "T," and JOVANNY ENRIQUEZ, aka "Gio," aka "Maniac," aka "@parkside.finest," aka "@parkside.general" shall forfeit to the United States all rights, title, and interest in any firearms and ammunition involved in the offense, and any property, real and personal, which constitutes or is derived from proceeds traceable to the offense.

27.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

//

13

1  it is the intent of the United States, pursuant to Title 21, United

2  States Code, Section 853(p), to seek forfeiture of any other property

3  of the defendants up to the value of the property listed above as being

4  subject to forfeiture.

5      All pursuant to Title 18, United States Code, Sections 924(d) and

6  981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

7      DATED: February 10, 2026.



11  ADAM GORDON
   United States Attorney

13  By: _____
14      ASHLEY E. GOFF
        JOSHUA C. MELLOR
15      PETER S. HORN
        Assistant U.S. Attorneys

14